AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2005 MAR 21 PM 4: 22

CLERK
WHYTE

| **United States District Court** | District Eastern District of Louisiana | | |
| --- | --- | --- | --- |
| Name Jeremy Mattio | Prisoner No. 369156 | Case No. | |

**05-0871**

| Place of Confinement | |
| --- | --- |
| Louisiana State Penitentiary, Angola, LA | |

**SECT. K MAG. 1**

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
| --- | --- |
| Jeremy Mattio | V. Burl Cain, Warden |

The Attorney General of the State of:

## PETITION

1. Name and location of court which entered the judgment of conviction under attack _____
   Twenty-second Judicial District Court, Parish of St. Tammany, Covington, LA

2. Date of judgment of conviction September 9, 1999

3. Length of sentence Thirty (30) years at hard labor

4. Nature of offense involved (all counts) One count La. R.S. 14:42.1, relative to forcible rape

5. What was your plea? (Check one)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☒
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

Fee #5⁰⁰
Process _____
X Dktd _____
CtRmDep _____
Doc. No _____

(2)

AO 241 (Rev. 5/85)

9. If you did appeal. answer the following:

   (a) Name of court ____Louisiana First Circuit Court of Appeal.____

   (b) Result____Conviction and Sentence affirmed____

   (c) Date of result and citation. if known ___State v. Jeremy Mattio, 810 So.2d 581 (La.App. 1 Cir.,___ December 28, 2001.

   (d) Grounds raised _____

   _____

   (e) If you sought further review of the decision on appeal by a higher state court. please answer the following:

      (1) Name of court ___Louisiana State Supreme Court___

      (2) Result ____Writ denied.____

      (3) Date of result and citation. if known ___State v. Mattion, 827 So.2d 1170 (La., October 25, 2002).___

      (4) Grounds raised ___Same as above.___

   _____

   (f) If you filed a petition for certiorari in the United States Supreme Court. please answer the following with respect to each direct appeal:

      (1) Name of court ___N/A___

      (2) Result _____

   _____

      (3) Date of result and citation. if known _____

      (4) Grounds raised _____

   _____

10. Other than a direct appeal from the judgment of conviction and sentence. have you previously filed any petitions. applications. or motions with respect to this judgment in any court. state or federal?
Yes ☒ No ☐

11. If your answer to 10 was "yes." give the following information:

   (a) (1) Name of court ___State of Louisiana Twenty-second Judicial District Court___

      (2) Nature of proceeding ___Application for Post-Conviction Relief___

   _____

      (3) Grounds raised ___1) Ineffective Assiatance of Counsel; 2) Withholding of Brady___ material

AO 241 (Rev. 5/85)

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐  No ☒

(5) Result ___Denied_____

(6) Date of result ___November 18, 2003._____

(b) As to any second petition, application or motion give the same information:

(1) Name of court ___Louisiana First Circuit Court of Appeal___

(2) Nature of proceeding ___Writ of Review_____

_____

(3) Grounds raised ___Same as above._____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐  No ☒

(5) Result ___Writ denied._____

(6) Date of result ___July 23, 2004_____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.     Yes ☒  No ☐
(2) Second petition, etc.     Yes ☒  No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

___N/A_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: Petitioner was denied his right to effective assistance of counsel.

Supporting FACTS (state *briefly* without citing cases or law)

1) Counsel failed to secure the testimony of two crucial defense witnesses.
2) Trial counsel failed to subpoena and inspect the victim's medical records.

3) Trial counsel inexplicably stipulated to damaging evidence.

4) Trial counsel failed to inform Petitioner of the intricacies of the consent defense and the possible importance of Petitioner's testimony.

B. Ground two: Petitioner was denied his right to a fair trial and to present a defense when the prosecution withheld Brady material in the form of the vicyim's rap sheet.

Supporting FACTS (state *briefly* without citing cases or law):

1) The prosecution failed to inform the defense that the victim was the subject of a pending prosecution.

AO 241 (Rev. 5/85)

C.  Ground three: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

D.  Ground four _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐   No ☒

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a)  At preliminary hearing ___Joe Rasponti._____
                              3900 N. Causeway Blvd, Ste. 470
                              Metairie, LA 70002

(b)  At arraignment and plea  Same as above._____

_____

AO 241  (Rev. 5/85)

(c) At trial    Same as above.

(d) At sentencing    Same as above.

(e) On appeal

(f) In any post-conviction proceeding    Kevin Boshea
                                          4209 Canal Street
                                          New Orleans, LA 70119

(g) On appeal from any adverse ruling in a post-conviction proceeding    Same as above.

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
    Yes ☐  No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
    Yes ☐  No ☒
    (a) If so, give name and location of court which imposed sentence to be served in the future:

    (b) Give date and length of the above sentence:

    (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
    Yes ☐  No ☐

Wherefore. petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_Lauren B Willees_
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

3/21/05
(date)

Signature of Petitioner

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JEREMY MATTIO** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **CASE NO.:** |
| | * | |
| **BURL CAIN, WARDEN,** | * | **SECTION:** |
| **LOUISIANA STATE PENITENTIARY** | | |
| | * | **JUDGE:** |

**FILED:** _____          _____

                                                          **DEPUTY CLERK**

### MEMORANDUM IN SUPPORT OF
### PETITION FOR WRIT OF HABEAS CORPUS PURSUANT
### TO TITLE 28 U.S.C. SECTION 2254

**MAY IT PLEASE THE COURT:**

NOW INTO COURT, comes Petitioner, Jeremy Mattio, through undersigned counsel,

who respectfully submits this memorandum in support of his petition for writ of habeas corpus,

and requests that the law and argument contained herein be considered in this matter.

### GROUNDS FOR RELIEF

This petition for writ of habeas corpus is filed pursuant to 28 U.S.C.A.2254. Petitioner is

in the custody of respondent pursuant to a state court judgment of conviction that was obtained

in violation of the Constitution of the United States. In particular, Petitioner represents that:

-1-

## WRIT GRANT STATEMENT

Petitioner's federal habeas petition should be granted pursuant to 28 U.S.C. § 2254(d) for the following reasons: there has been a state court adjudication of all of the issues presented in this petition; the issues in question involve federal law; the issues were adjudicated in formal state court proceedings; and the adjudication resulted in a decision that was contrary to clearly established federal law under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Petitioner herein asserts that this Petition is timely and filed well within the one-year deadline established by 28 U.S.C. 2254(d).

## STATEMENT OF THE CASE

Petitioner Jeremy Mattio, together with co-defendant, Jamie Hager, was indicted by the Grand Jury for the Louisiana Twenty-Second Judicial District, Parish of St. Tammany, for one (1) count of violation of La. R.S. 14:42, relative to Aggravated Rape. Petitioner entered a plea not guilty to the charge.

Petitioner's trial counsel filed several pre-trial motions in this matter. In particular, *Motion For Severance of Defendants* and a *Motion to Suppress Statement of Co-Defendant* were filed. (R., p. 63-65). Despite the prejudice caused to Petitioner, both *Motions* were denied on August 31, 1999. (R., p. 104). The state filed a *Motion In Limine* pursuant to Louisiana Code of Evidence Articles 412 and 412.1, seeking the exclusion of any reference to the alleged victim's past sexual behavior and attire. The trial court granted the state's *Motion*. (R., p.116).

Jury trial in this matter was held for both Petitioner and his co-defendant on September 7-9, 1999, (R., pp. 25 -35). The jury found each defendant guilty of the lesser included offense of forcible rape. Thereafter, the state filed a *Multiple Offender Bill of Information* was filed against each defendant. (R., p. 86). Petitioner was sentenced to thirty (30) years at hard labor. Following Petitioner's conviction, Petitioner's trial counsel filed a *Motion for New Trial*,

alleging in particular that the absence of an essential witness and the in sufficiency of the evidence warranted the granting of a new trial.  After hearing, this *Motion* was denied.[1]

Petitioner sought writs to the Louisiana First Circuit Court of Appeal.  On December 28, 2001, the appellate court affirmed the conviction and sentence in an unpublished decision.  State v. Mattio, 810 So.2d 581 (La.App. 1 Cir. 2001).  Thereafter, Petitioner applied for a *Writ of certiorari* to the Louisiana Supreme Court, which denied writs on October 25, 2002.  State v. Mattio, 827 So.2d 1170 (La. 2002).

Petitioner timely filed an *Application for Post-Conviction Relief* was filed in the Twenty-Second Judicial District for the Parish of St. Tammany on October 15, 2003, within one year of the finality of his conviction, as required by 28 U.S.C. 2254(d).  It is apparent from the record that the Twenty-second Judicial District Court denied Petitioner's *Application* on November 18, 2003; however, *neither* Petitioner nor his state post-conviction counsel were informed of this ruling.  Only upon routine inspection of the record did Petitioner's counsel discover the denial.  After discovering the court's oversight, Petitioner's counsel thereafter filed a *Notice of Intent* with district court.  The district court acknowledged its mistake and the lack of notice, and granted Petitioner until March 18, 2004 to seek *Writs of Certiorari, Mandamus and Prohibition* to the Louisiana Third Circuit Court of Appeal.

Petitioner timely sought relief to the Louisiana First Circuit, which denied writs on July 23, 2004.  Thereafter, Petitioner timely applied for a *Writ of Review* of the denial of his *Application for Post-conviction Relief* to the Louisiana Supreme Court.  The state high court issued a one-word denial on Petitioner's writ on March 11, 2005, and this *Petition for Writ of Habeas Corpus* timely follows.

---

[1]As discussed below, the *Motion for New Trial* hearing is an example of the egregious ineffective assistance of counsel that Petitioner received at trial.  At the motion hearing, Petitioner's trial counsel alleged that the testimony of an absent essential witness, whom he had previously interviewed and failed to secure for trial, was newly discovered evidence.

## STATEMENT OF THE FACTS

On August 24, 1997, Mrs. JoAnn Burke was awakened at her residence outside of Slidell, Louisiana by a knock on her door.  Mrs. Burke testified that alleged victim, Michelle Jackson, told Mrs. Burke that her car had broken down and gotten stuck in mud on the shoulder of Highway 190 between Lacombe and Slidell, Louisiana.[2]  According to Jackson, she had flagged down two men in a truck for help.  The two men attempted to push her car out of the mud, and then, at her request, drove her to a gas station to use the phone.  Jackson then accompanied the men back to her disable vehicle.  According to Jackson, the men  raped her after again trying to push her car out of the mud.  Jackson stated that the two men did not lure or force her into the truck, and she claimed not to remember whether or not either man had worn a condom.

Following the alleged attack, Jackson claimed to run barefoot through the mile of dense woods to the Burke house.  At trial, Jackson was unable to explain the lack of cuts or bruises on her feet after running through the woods and a large ditch.  Mrs. Burke allowed Jackson to telephone police.  At trial, Mrs. Burke testified that the alleged victim was dirty and barefoot, and further acknowledged that her husband told her that he smelled alcohol on the alleged victim's breath.  Although he was clearly an important witness to the victim's first report, Mr. Burke was not called as a witness by either the prosecution or the defense.

Detective Becky Dillon  was  the investigator from the St. Tammany Parish Sheriff's Department assigned to the matter.  At trial, Detective Dillon testified that she interviewed the alleged victim at a local hospital following the incident.  A sexual assault examination was performed on Jackson.  She described Ms. Jackson as being very upset, and was allowed over

---

[2]How exactly Jackson's car became stuck in the mud near an abandoned store on a dark highway is not clear from the record.  According to the victim, she got a phone call from a friend who had been "beaten up" and told Jackson to meet her at this location. This friend never materialized, and Jackson's testimony at trial failed to clarify the specific circumstances which brought her to be stuck in the mud in the woods, alone, and behind an abandoned building.

defense objection at trial to testify to hearsay statements regarding Jackson.  The examination

results reveal the absence of any vaginal trauma, bruising or tearing.  The examining physician

further testified at trial that he did not note any torn clothing or injuries on the victim.  Jackson

informed the examining doctors that she was under the influence of Xanax at the time of the

incident.  The doctor testified at trial that consensual sex could have occurred.

Jackson gave police a detailed description of the driver of the truck, Petitioner's co-

defendant, and police compiled a composite of the perpetrator.  Jackson was uncertain of the

description of the passenger, but alleged that both men had raped her.  Jackson also offered a

description of the truck driven by the perpetrators.  Approximately one week later, on September

2, 1997, St. Tammany Parish Sheriff's Officers conducted a traffic stop of a truck resembling

Jackson's description, and detained the driver, Jamie Hager, who had tattoos and a shaved head

similar to those described by at the alleged victim.  Jackson identified Petitioner's co-defendant

with "95 %" certainty from a photographic lineup.

Petitioner's co-defendant gave multiple statements to authorities which indicated that

Petitioner was the passenger in the truck the night that they tried to assist Jackson.  In all of

Hager's statements, the sexual contact between himself and Jackson and Petitioner and Jackson

were consensual and instigated by a very intoxicated Jackson.  Petitioner was arrested pursuant

to Hager's implication.  Petitioner did not make a statement to police, but neither defendant ever

denied having sexual relations with Jackson.  Both maintain that it was a consensual encounter.

Thus, the defense offered before the jury was consent.  Rape kits were conducted on

Petitioner and his co-defendant, and Petitioner's trial counsel stipulated to the state's DNA test

results as matching Petitioner's DNA.  Detective Dillon identified a plaster footprint impression

taken from the scene as being consistent with Petitioner's tennis shoe.  Petitioner's trial counsel

further stipulated to the victim's identification of Petitioner, and stipulated that a palm print lifted from the scene belonged to Petitioner

On cross examination, Detective Dillon testified that Jackson had given her the names of several witnesses who were friends of the alleged victim. These witnesses had been at a party at Jackson's house on the day of the alleged incident where they were drinking alcohol. Detective Dillon failed to interview these witnesses, although they no doubt possessed important information regarding the alleged victim's sobriety on the evening in question.

Jackson's time line of events was inconsistent with her phone calls to her friends and her arrival at the Burke residence. Jackson reported the incident to a doctor as occurring at 11:00 p.m. However, her visit to the Burke residence was at 1:30 a.m., and she called her mother and friend, Ms. Dossman and Ms. Kennedy, (i.e., 9:30 p.m.) and the visit to Ms. Burke's residence, (i.e., 1:30 a.m.).

At trial, the alleged victim stated that she got a better view of the driver of the truck and was unsure of the passenger. Both defendants were identified by Ms. Jackson in court. Jackson admitted that she had previously been convicted of La. R.S. 14:98, relative to Driving While Intoxicated.

Mr. Bernie Chatham, a private investigator retained by Petitioner's trial counsel, was the only witness called on behalf of Petitioner. Mr. Chatham testified to the distance the victim had to run from the scene of the alleged crime to the Burke residence. No other witnesses were called for defendant Mattio.

Following this testimony, the jury found each defendant guilty of the lesser include offense of forcible rape, and Petitioner was sentenced to thirty years at hard labor pursuant to La. R.S. 15:529.1.

## ASSIGNMENT OF ERROR ONE

**Petitioner was denied his right to effective assistance of counsel as provided by Article 1, sections 2, 3, 13, 16 and 20 of the Louisiana Constitution of 1974 and Amendments V, VI, VIII, and XIV of the United States Constitution in that the numerous incidents of ineffectiveness led to a manifest absence of counsel.**

## LAW AND ARGUMENT

Petitioner herein asserts that the instances described below reveal that his trial counsel was so ineffective as to deny Petitioner any meaningful representation at all.

"The right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970). The right to effective counsel can be violated by either the prosecution or the defense. The government can infringe on this right by interfering "in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." Geders v. United States, 425 U.S. 80 (1976). *See also* Herring v. New York, 422 U.S. 853 (1975); Brooks v. Tennessee, 406 U.S. 605 (1972); Ferguson v. Georgia, 365 U.S. 570 (1961). Counsel, however, can also deprive a defendant of the right to effective assistance, simply by failing to render "adequate legal assistance." Cuyler v. Sullivan, 446 U.S. 335, 344 (1980).

Ineffective assistance of counsel claims may be brought in a collateral proceeding under § 2255. *See* Massaro v. United States, 538 U.S. 500 (2003). *See also* Strickland v. Washington, 466 U.S. 668 (1984) . ("An ineffectiveness claim, however, as our articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceeding whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, no special standards ought to apply to ineffectiveness claims made in habeas proceedings").

When a petitioner claims that he was denied effective assistance of counsel, he must demonstrate that: (1) his counsel's performance was deficient; and (2) his counsel's deficient performance prejudiced his defense. *See* Strickland, 466 U.S. at 687. Thus, a convicted defendant seeking relief must demonstrate that counsel's performance was deficient <u>and</u> that the deficient performance prejudiced his or her defense. *Id.* at 697. When evaluating a claim of ineffective assistance of counsel, however, a court need not address the two <u>Strickland</u> prongs in order, or even address both of them. If a court finds that petitioner has made an insufficient showing as to either of these two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. *Id.* To establish deficient performance, as required to support a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the objective standard of reasonableness based on prevailing professional norms. <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003).

In order to prove prejudice under the <u>Strickland</u> standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694; <u>United States v. Chavez</u>, 193 F.3d 375, 377 (5th Cir. 1999) ("a reasonable probability exists that counsel's deficient performance affected the outcome and denied [petitioner] a fair trial."). In <u>Strickland</u>, the Supreme Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* at 669. In making a determination as to whether prejudice occurred, courts must review the record to determine the "relative role that the alleged trial errors played in the total context of [the] trial." <u>Crockett v. McCotter</u>, 796 F.2d 787 at 793 (5th Cir. 1986). Indeed, the court must evaluate any claims of ineffectiveness in a specific context peculiar to the case and the counsel:

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the

> particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.

Strickland, 466 U.S. at 690. Petitioner therefore submits specific instances of trial counsel's prejudicial and inexcusable conduct.

Petitioner's defense counsel at trial failed to provide effective assistance in numerous instances. Many of the following assignments of error standing alone demonstrate the fact that Petitioner was deprived of effective assistance at trial. There are also less egregious, yet still highly prejudicial errors, in the record. When added together and assessed under the cumulative prejudice test, there is no doubt that Petitioner's trial counsel was ineffective. The seminal case of Strickland v. Washington's focus on the overall fairness of the proceedings seems to dictate that a cumulative prejudice analysis is required: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional *errors*, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 675 (1984).

**1.      Trial counsel failed to secure the presence of two crucial defense witnesses at trial.**

As noted above, Petitioner was convicted of the lesser included offense of forcible rape after trial by jury. Petitioner's defense at trial was consent of the alleged victim. Crucial to the presentation to that defense was any evidence tending to indicate that the victim was intoxicated at the time of the incident.

**a.      James Guillory.**

Acadian Ambulance Services ambulance driver James Guillory was one of the first EMS personnel to arrive at the Burke residence after the alleged victim contacted police. Mr. Guillory was interviewed by the defense investigator, and informed the investigator that Mr. Guillory has smelled alcohol on the victim's breath and that she appeared intoxicated. The victim testified at

trial that she was not under the influence of any alcohol, so Mr. Guillory's testimony was both

good impeachment evidence and information crucial to establishing a reasonable doubt.

Despite the clear importance of Mr. Guillory's testimony, Petitioner's trial counsel failed

to adequately ensure his presence at trial.   At the *Motion for New Trial*, Petitioner's counsel

called its investigator as a witness, and urged that Mr. Guillory's testimony regarding the alleged

victim's intoxication to be newly discovered evidence.

The state responded as follows:

> The defense can ask for a delay until such time as they can locate the witness. This
> witness was absolutely somebody that made their self available to not only defense
> counsel but to defense counsel's investigators. They could have stopped the trial asked
> for a delay, asked for an instanter, get the sheriff to go out there find this person and
> bring them to court. None of that was done in this case, Judge.

(R.p. 783).  In its Ruling denying the motion, the trial court noted that Mr. Guillory (as

opposed to the investigator) was the appropriate witness to have called at the hearing. The trial

court further noted that the adduced testimony was nothing more than rank hearsay.   The

Louisiana Third Circuit Court of Appeal agreed with the trial court, noting the findings of the

trial court and stated, "While Guillory's testimony may have been material to the issues at trial,

the testimony was not new evidence discovered after trial." State v. Mattio, 810 So.2d 581

(La.App. 1 Cir. 2001)

While the defense vehemently asserted the importance of Mr. Guillory's testimony, no

real effort was made to produce Mr. Guillory for trial.  Trial was *three full days*, and trial counsel

failed to move for a trial continuance, request a recess of trial or request the issuance of an

instanter subpoena to secure Mr. Guillory's presence.  Nor was the Sheriff's Office requested to

help locate Mr. Guillory and bring him to court.  At trial, trial counsel failed to question the

defense investigator (Bernie Chapman) regarding his interview with Mr. Guillory, and only

raised the substance of Mr. Guillory's testimony after the conviction.

-11-

Petitioner respectfully asserts that his claim of ineffective assistance of counsel has never been considered on the merits.   Any testimony relating to the alleged victim's intoxication, coupled with the lack of physical evidence indicating anything other than consensual sex was crucial to Petitioner's case.

Jackson stated at trial that the two men did not lure or force her into the truck.   Jackson could not explain the lack of cuts or bruises on her feet during this incident in which she stated she was barefoot.   On the stand, Jackson denied having alcohol on her breath and indicated that anyone who said otherwise would have been mistaken.   Given that response, it seems incumbent and necessary that both Mr. Burke and Mr. Guillory be called as witnesses at trial.

Pre-trial investigation is an essential element to effective assistance of counsel.   Any attorney must engage in a reasonable amount of pretrial investigation and at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case.   Nealy v. Cabana, 764 F.2d 1173, 1177 (5th Cir. 1985).   Ineffectiveness of counsel is clearly present if the attorney fails to investigate a plausible line of defense or interview available witnesses.   These can hardly be considered strategic choices since counsel by his failure has not obtained the facts upon which such a tactical decision could be reasonably made.   Nealy 764 F. 2d at 1178, Bryant v. Scott, 28 F. 3d 1411 (5th Cir. 1994); Profitt v. Waldron, 831 F.2d 1245 (5th Cir. 1987);   United States v. Gray, 878 F.2d 702 (3rd Cir. 1989).

**b.      Mr. Burke.**

As discussed above, Mrs. Burke testified for the state that Jackson appeared on her doorstep on August 24, 1997, incoherent, upset and claiming that two men had raped her.   Mr. Burke was also present for this event, and Mrs. Burke testified that he had informed her that he smelled alcohol on the victim's breath.   Much like EMS driver James Guillory, Mr. Burke's testimony establishing the intoxication of the alleged victim was crucial information to raise a

-12-

reasonable doubt in the minds of the jury.  Trial counsel failed to attempt to secure Mr. Burke's presence at trial in any way.  Mr. Burke was not even subpoenaed by the defense, and trial counsel failed to request an instanter following Mrs. Burke's revealing testimony about her husband's knowledge.

Both the testimony of Mr. Guillory and Mr. Burke would have served to impeach the testimony of multiple state witnesses, most importantly that of the victim, who denied she had consumed any alcohol on the night in question.  The testimony of the two men would have further served to create a reasonable doubt in the mind of the jury.  Int his alleged rape case in which a consent defense was offered, the credibility of the alleged victim was central to the state's case against Petitioner.  Thus, Petitioner was gravely prejudiced by trial counsel's failure to produce two vital defense witnesses.

### 2. Trial counsel failed to subpoena and inspect the alleged victim's medical records.

Louisiana jurisprudence holds that the failure to investigate the existence of mitigating evidence is ineffective assistance of counsel.  State v. Brooks, 661 So.2d 1333 (La. 10/16/95).  Petitioner's counsel failed to subpoena the alleged victim's entire medical record.  It is clear from the record that Michelle Jackson was treated at the hospital; however, it is unknown what her medical levels of intoxication were.

A Subpoena Duces Tecum was never requested on behalf of Petitioner and there was no toxicology report produced at trial.  Since the defense at trial was consent and thus Jackson's credibility was at issue, this medical information was essential to Petitioner's defense and the creation of reasonable doubt.  For this reason, trial counsel was severely ineffective.

### 3. Trial counsel inexplicably stipulated to damaging evidence against Petitioner.

Petitioner's trial counsel made the decision proceed with a consent defense to the exclusion of other defenses.  Although the alleged victim's identification of Petitioner was very

-13-

uncertain, counsel chose to *stipulate* to the identification, DNA findings and other physical evidence. Trial counsel failed to test the admissibility of this evidence prior to trial, and by stipulating at trial, assured the jury of its credibility. For this failure to put the state's evidence through any sort of adversarial testing, trial counsel was ineffective.

**4.     Trial counsel failed to inform Petitioner of the intricacies of the consent defense and the possible importance of Petitioner's testimony.**

Both Petitioner and his co-defendant presented a consent defense. Particularly in a rape case, the jury is often left with a choice between "he said, she said". Petitioner asserts that the potential importance of his own version of events presented via testimony before the jury was never explained to him by trial counsel. Instead, trial counsel only presented the testimony of an investigator that did nothing to buttress the consent defense. Petitioner did not have a criminal history which was either violent or sexual in nature. The failure of trial counsel in explaining to Petitioner the importance of  explaining his actions through his own testimony is consistent with the respective failure to properly present a defense at trial.


**ASSIGNMENT OF ERROR TWO**

**Petitioner was denied his right to a fair trial and his right to due process of law, under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Art. 1, Sec. 2 and 16 of the Louisiana Constitution of 1974, when the prosecution withheld exculpatory material from the defense, specifically the criminal history of victim indicating that the victim was the subject of a pending prosecution.**

**LAW AND ARGUMENT**

Michelle Jackson testified at trial that she had a prior conviction for violation of R.S. 14:98, relative to Driving While Intoxicated.   However, it was unknown to either defense counsel that Ms. Jackson had an additional D.W.I prosecution pending at the time she testified in this matter.

Jackson had been arrested for D.W.I. Second Offense in Caddo Parish on March 15, 1999 (Case No. 202417). Interestingly, the Caddo Parish prosecution remained open until after Ms. Jackson testified in St. Tammany Parish. Petitioner's trial was held in September 1999. On January 12, 2000, Ms. Jackson pled guilty to D.W.I Second Offense. If granted an evidentiary hearing, Petitioner's trial counsel will testify that he had no knowledge of the victim's pending prosecution.

The relevancy of this information is clear. First, the alleged victim second arrest for Driving While Intoxicated is indicative of an alcohol problem. Second, evidence of the victim's previous problems with alcohol and the legal system may help explain the curious circumstances in which she found herself just prior to the alleged crime. As discussed, Jackson's car was stuck in deep mud, well off the road, late at night and on a stretch of highway that was not populated. She claimed she was going to give a friend arrive, yet the friend was never produced at trial.

It is submitted that the state should have (pursuant to State v. Laird supra) provided a copy of the rap sheet of Michelle Jackson to defense counsel. Furthermore, the state should have been informed counsel and the trial court of Jackson's pending prosecution. Any evidence tending to indicate that the victim had a drinking problem was certainly both exculpatory and impeachment evidence. If the evidence is relevant to the defense asserted at trial, then that evidence should be subject to admissibility. State v. Vigee, 518 So. 2d 501 (La. 1988); Washington v. Texas, 388 U.S. 14 (1967). Moreover, this evidence was clearly more probative than prejudicial.

The United States Supreme Court has consistently held in no uncertain terms that the withholding of exculpatory evidence by the State results in a violation of a defendant's fundamental right to due process of law. The landmark case is, of course, Brady v. Maryland, in

-15-

which the Court laid down the foundational policy and a roadmap for a Brady claim. "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of administration of justice suffers when any accused is treated unfairly." Brady v. Maryland, 373 U.S. 83, 87 (1963).

Petitioner asserts that the state intentionally suppressed the statements of its main witnesses, the only witnesses to identify Petitioner in a case in which no physical evidence exists. Petitioner further asserts that the contents of the victims statements, especially when coupled with the numerous other violations in this case, destroy all confidence in the guilty verdict. See Kyles v. Whitley, 514 U.S. 419, 434 (1995). "When the State's case hinges on the testimony of one eyewitness, the Brady violation looms larger." State v. Bright, 2004 WL 1157411 (La. 2004). Any impeachment evidence contained in the district attorney's file should have been turned over to the defense. See State v. Knapper, 579 So.2d 956, 959 (La. 1991)

In order to prevail on a Brady claim, a defendant must show that 1) the prosecution withheld evidence; 2) that evidence was favorable to the defendant, and 3) that evidence was material to either guilt or punishment. Id. Subsequent cases have clarified the Brady standards. The defendant does not have to show that the inclusion of the withheld evidence would have resulted in a different outcome (i.e. acquittal); rather, the defendant must show that the use of the excluded, exculpatory at trial gives a reasonable probability that a different result would have been reached. See United States v. Bagley, 473 U.S. 667 (1985). Such a reasonable probability has been held to exist when the "government's evidentiary suppression undermines confidence in the outcome of the trial." Kyles v. Whitley, 514 U.S. 419, 434 (1995).

Furthermore, the prosecutor has more than just a duty to release information at the request of the defense. The prosecutor has an affirmative duty to voluntarily disclose exculpatory evidence. See Kyles v. Whitney, 514 U.S. 419 (1995). This duty extends to any

-16-

exculpatory evidence, even information in the hands of law enforcement and even if it cannot be shown that the prosecutor had any personal knowledge of the existence of the favorable information. *Id.* Finally, the ultimate effect of the withholding of exculpatory evidence is viewed cumulatively and not by individual analysis of each piece of evidence. *Id.*

As discussed above, Petitioner has clearly met the <u>Brady</u> standard. The prosecution withheld the vital evidence of the alleged victim's criminal history showing an arrest and pending prosecution for Driving While Intoxicated. The evidence was indisputably favorable to Petitioner because it contained both exculpatory and impeachment evidence, and the evidence was clearly material to guilt or punishment. Petitioner thus respectfully requests long-overdue relief.

## CONCLUSION

Petitioner has exhausted all state court remedies, and now seeks long-due relief from this Honorable Court.  28 U.S.C. § 2254 provides in pertinent part,

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

All claims alleged herein are based on clear violations of Petitioner's constitutional rights and hence Petitioner requests that this Honorable Court entertain this petition pursuant to the mandate of 28 U.S.C. § 2254 .  For the foregoing reasons, Petitioner respectfully requests that this Honorable Court grant his petition for writ of Habeas Corpus and reverse the decisions of the trial court, the Louisiana Fifth Circuit Court of Appeal, and the Louisiana Supreme Court, and grant relief as deemed necessary.

Respectfully submitted,
**LAURIE WHITE & ASSOCIATES**

Laurie A. White, Bar No. 17898
Lauren E. Williams, Bar No. 28269
633 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504) 525-1020
Fax: (504) 525-1025

Attorneys for Petitioner,
Jeremy Mattio

## CERTIFICATE OF SERVICE

I, Lauren E. Williams, do hereby certify that a copy of the forgoing has been delivered to the St. Tammany Parish District Attorney's office via U.S. Mail, postage pre-paid and properly addressed this 21nd day of March, 2005.

_Lauren E Willee_
LAUREN E. WILLIAMS